UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LEANNE KIRSCH, PH.D.,

   Plaintiff,

  v.                 Case No. 07-C-0638

JEFFERSON PILOT FINANCIAL
INSURANCE COMPANY, et al.,

   Defendants.

---

**DECISION AND ORDER**

---

After she was denied long term disability benefits by Jefferson Pilot Financial Insurance Company, n/k/a Lincoln National Life Insurance Company, ("Jefferson Pilot") under an employee benefit plan ("the Plan") obtained by her employer, Prevea Health Services Inc. ("Prevea") (collectively, "Defendants"), Dr. Leanne Kirsch filed this suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Jurisdiction exists in this Court because the suit involves a question of federal law. 28 U.S.C. § 1331. Defendants have now moved for summary judgment. For the following reasons, the Defendants' motion will be granted.

**BACKGROUND**

Dr. Kirsch was formerly employed by Prevea as a neuropsychologist. (DPFOF ¶ 6.) Her position was sedentary, involving sitting and listening, and entailed some drafting of reports to summarize sessions with patients. Little lifting or carrying was involved in her work, and she was not required to lift more than ten pounds. (DPFOF ¶ 7.)

Prevea provided Dr. Kirsch with long-term disability insurance (DPFOF ¶ 3) and Jefferson Pilot served as an administrator of the Plan. (DPFOF ¶ 4.) The Plan provides for payment of a "Total Disability Monthly Benefit," following a 90-day "Elimination Period," to any employee who is "Totally Disabled" and under the regular care of a physician. (KIRSCH01337, KIRSCH01353.) During the first three years an employee receives benefits (the "Own Occupation Period,") the Plan defines "Totally Disabled" to "mean[] that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation." (KIRSCH01353.)[1] Under the heading "**COMPANY'S DISCRETIONARY AUTHORITY**", the Plan expressly provides that "the Company has the authority to manage the Policy, interpret its provisions, administer claims and resolve questions arising under it." (KIRSCH01347.) Under the terms of the Plan, this includes, but is not limited to, the authority to: "1. establish administrative procedures, determine eligibility and resolve claims questions; 2. determine what information the Company reasonably requires to make such decisions; and 3. resolve all matters when an internal claim review is requested." (KIRSCH01347.) The Plan further provides that "[a]ny decision the Company makes in the exercise of its authority shall be conclusive and binding; subject to the Insured Employee's rights to request a state insurance department review or to bring legal action." (*Id*.)

Dr. Kirsch discontinued working on August 17, 2005, (DPFOF ¶ 9) and applied to receive disability benefits under the Plan on October 31, 2005. (DPFOF ¶ 10.) In her application for benefits, Dr. Kirsch summarized the reasons for her inability to work as follows:

> Dx. w/ polyglandular autoimmune syndrome which includes celiac disease. Chronic lymphocytic thyroiditis, & adrenal insufficiency, which results in above symptoms, as well as a serum B-cell deficiency. The autoimmune process results in extreme

---

[1] The parties do not dispute that this is the applicable time period and definition in this case.

> fatigue and severe arthralgia and cognitive disorganization which make it impossible for me to keep up with the schedule expected of a clinical provider. The immune deficiency results in chronic recurrent infections, such as strep throat, which makes it impossible to work. In addition, I have been diagnosed with connective tissue disease/probable lupus. The arthralgic pain from this, makes it impossible to type or perform tasks with my hands, which is required in my job.

(KIRSCH01127-01130.) In support of her application, one of Dr. Kirsch's treating physicians, Dr. William Grossman, submitted a "Physician's Statement," in which he indicated that Dr. Kirsch's "primary diagnosis" was "celiac sprue, hypothyroidism, autoimmune polyendocrine syndrome, [and] probable lupus." (KIRSCH01131.) Dr. Grossman also identified "renal disorder, anemia of chronic condition, [and] thyroid disease" as "secondary conditions contributing to the disability," and indicated that Dr. Kirsch's use of her hands in repetitive actions was "limited secondary to pain/joint." (KIRSCH01131-01132.)

Prevea completed the "Job Analysis" section of the application, which described the functions Dr. Kirsch was required to perform in her position as a neuropsychologist. (KIRSCH01120-01121.) Under the section of the form that asked, "[w]hat are the major tasks requiring use of one or both hands," Prevea listed "[r]eviewing charts," "[h]andwritten notes," and "[t]yping," and indicated that each required the use of both hands. (KIRSCH01121.)

On December 29, 2005, Jefferson Pilot informed Dr. Kirsch that it had completed its initial review of her application and referred her claim to its Medical Reviewer in order to complete review. (DPFOF ¶ 15.) It invited Dr. Kirsch to submit additional medical notes or lab results in support of her claim. (*Id.* ¶ 16.) On January 6, 2006, Jefferson Pilot denied Dr. Kirsch's claim and sent her a letter explaining that upon reviewing her medical records and Dr. Grossman's Physician Statement dated November 23, 2005, it had determined she was not disabled under the terms of the

3

Plan. (DPFOF ¶ 17.) The letter noted that Dr. Grossman had made several possible unconfirmed diagnoses for Dr. Kirsch's symptoms, including celiac sprue, hypothyroidism and autoimmune polygranidular syndrome, and lupus, but his physical examination of her showed no evidence of infection, rashes, joint swelling. (KIRSCH01024.) Jefferson Pilot's letter noted that Dr. Grossman had recommended that Dr. Kirsch increase her iron supplement and possibly undergo intravenous iron supplementation in light of lab reports confirming her iron deficiency anemia, but had concluded immune suppression treatment was not indicated, and had not recommended any aggressive treatment that would preclude Dr. Kirsch from performing her job. (KIRSCH01025.)

On May 5, 2006, counsel for Dr. Kirsch sent a letter to Jefferson Pilot, appealing the denial of benefits. The letter admitted that "treating physicians continue[d] to be baffled by her test results and their inability to pinpoint her specific problems," but argued that Dr. Kirsch's conditions "taken as a whole, render[ed] her totally disabled." (DPFOF ¶¶ 23-24.) In support of her claim for benefits, the letter asserted that while Dr. Kirsch's position was "sedentary, it [was] mentally demanding and require[d] complete concentration and mental focus." (*Id*.) On May 16, 2006, counsel informed Jefferson Pilot that Dr. Kirsch had qualified to receive Social Security Disability Income benefits, effective August 2005. (DPFOF ¶ 26.)

On November 9, 2006, Jefferson Pilot informed Dr. Kirsch that it had decided to uphold its initial denial of benefits, based on its review of all of the documentation submitted in support of her initial claim and her appeal, as well as the findings of three independent physicians to whom it had submitted her records for review: Dr. Chiodo, an internist, Dr. Lueg, an endocrinologist, and Dr. Hemady, an immunologist. (KIRSCH00239-00242.) Jefferson Pilot explained that each of the reviewing physicians had concluded that Dr. Kirsch's medical record did not contain objective

4

medical evidence to support restrictions on her ability to perform her job. Dr. Lueg had reported, "[t]here [were] no objective findings to support impairment due to untreated Endocrine conditions," and that Dr. Kirsch "ha[d] no restrictions based on her thyroid or possible adrenal problems." (KIRSCH00337.) Dr. Chiodo had remarked that, "[m]edical documentation and objective testing d[id] not reveal a condition of severity which would render the Claimant unable to perform in her occupation," and noted that Dr. Kirsch's subjective complaints of impairment seemed inconsistent with her desire to become pregnant and her ability to write clear, lengthy letters to her doctors, and her demonstrated ability to play an active role in pursuing medical testing and treatment. (KIRSCH00335.) Dr. Hemady had concluded that Dr. Kirsch's medical records did not suggest the presence of an immune deficiency that would compromise her mental functioning or require limitation of exposure to patients, found the restrictions and limitations suggested by her attending physician to be unreasonable, and stated there was "no compelling evidence from an immunology standpoint that the claimant [was] unable to perform the duties of her own occupation." (KRISCH00190-00192.) Jefferson Pilot provided copies of the reviewing physicians' reports to Dr. Kirsch's treating physicians for comment, and acknowledged that Dr. Kirsch's treating physicians disagreed with the findings of the reviewing physicians. (KIRSCH00241.) In its letter upholding its decision to deny benefits, Jefferson Pilot explained the reports of each physician and Jefferson Pilot's conclusion that the documentation as a whole did not support ongoing restrictions and limitations that would render Dr. Kirsch unable to perform her job. (KIRSCH00239-00242.)

On January 16, 2007, Dr. Kirsch requested a second and final administrative appeal to the Jefferson Pilot Appeals Council. (DPFOF ¶ 37.) She also filed a complaint with the State of Wisconsin Office of the Commissioner of Insurance, (DPFOF ¶ 39) who asked that a review of Dr.

5

Kirsch's file be done "considering all of the conditions in one person simultaneously," and that Dr. Lueg comment on Dr. Grossman's response to his initial report. (DPFOF ¶ 40.) Jefferson Pilot requested a fourth independent review by Dr. Metcalfe, a Fellow of the American Academy of Disability Evaluating Physicians, (DPFOF ¶ 46) who provided a report summarizing his review of Dr. Kirsch's medical records, as well as the reports of the treating and reviewing physicians. (KIRSCH00176-00181.) In his report, Dr. Metcalfe acknowledged Dr. Davis' opinion that Dr. Kirsch had psoriatic arthritis and related arthralgias, but noted that Dr. Davis did not explain why he believed this to cause functional disabilities related to her work, and the record did not reveal objective evidence of joint abnormalities or swelling. Dr. Metcalfe reported that he "failed to find any compelling, clear, and well-documented clinical evidence to indicate a degree of impairment sufficient to cause a disability rendering [Dr. Kirsch] unable to physically sit for six hours out of an eight-hour day and lift 10 pounds or less occasionally from September 16, 2006 forward." (KIRSCH00181.)

After Dr. Metcalfe's evaluation was provided to Dr. Kirsch, she sought treatment from four new treating doctors between April and May, 2007: urologist Dr. Fischer, gastrointestinal Dr. Edison, rheumatologist Dr. Gierl, and a primary care physician, Dr. Constantinescu. (DPFOF ¶ 49.) These additional medical records were then reviewed at Jefferson Pilot's request by another independent physician, Dr. Jose Perez Jr., who is board certified in internal medicine. (DPFOF ¶ 50.) Dr. Perez reported, "The patient had been given a variety of diagnoses and in some cases treated at her insistence. There is no evidence of hypothyroidism, Addison's disease, or symptoms that are consistent with celiac sprue." (KIRSCH00126.) He concluded that based on his review of the medical evidence "from an internal medicine perspective, objective evidence of a clinical

6

impairment that indicate[d] that the claimant ha[d] restrictions or limitations [was] not noted. There [was] no evidence of the patient's inability to perform at least sedentary job duties . . . ." (*Id.*)

In support of her appeal, Dr. Kirsch submitted multiple additional letters from treating physicians and lay persons who assisted her on a daily or weekly basis. (KIRSCH00132.) Drs. Leug (KIRSCH 00201) and Hemady (KIRSCH00214-00215) submitted statements indicating that their professional opinions had not changed upon review of the statements offered by Dr. Grossman in rebuttal of their original reports.

Ultimately, Jefferson Pilot again concluded it was unable to approve benefits, and informed Dr. Kirsch of its decision in a twelve page letter that summarized the medical records, physician's opinions, and other relevant evidence, and articulated Jefferson Pilot's reasons for denying benefits. (KIRSCH00095-00106.) The letter indicated that the medical record did not support restrictions on Dr. Kirsch's ability to perform her occupation, and expressed agreement with Dr. Lueg's conclusion that there was insufficient objective evidence that Dr. Kirsch's symptoms or diagnoses caused functional limitations that impaired her work. (KIRSCH00106.)

Dr. Kirsch then filed the instant case on July 10, 2007, claiming the Defendants had improperly denied her benefits under the Plan. Defendants have now filed a motion for summary judgment, in which they claim that the Court must uphold their decision to deny benefits under a deferential standard of review.

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact

7

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id*. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id*. at 247-48.

The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989). Where the administrator has such discretion, the court reviews a denial of benefits under the arbitrary and capricious standard. *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007). The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan." *Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). "[T]he administrator's decision will only be overturned if it is 'downright unreasonable.'" *Williams*, 509 F.3d at 321 (internal citation omitted).

In this case, the Plan provides Jefferson Pilot the authority to "manage the Policy, interpret its provisions, administer claims and resolve questions arising under it . . . establish administrative

procedures, determine eligibility and resolve claims questions[,] determine what information the Company reasonably requires to make such decisions[,] and [] resolve all matters when an internal claim review is requested." (KIRSCH01347.) Dr. Kirsch does not contest Defendants' contention that this language is sufficient to invoke the deferential standard of review accorded plans that reserve eligibility determinations to the discretion of the plan administrator. Instead, she argues that the Court should summarily deny the Defendants' motion for summary judgment because they initially failed to file the complete administrative record. But that defect has since been cured, and the Court has before it the full administrative record in the case. I therefore proceed to consider Dr. Kirsch's arguments under the arbitrary and capricious standard of review.

Dr. Kirsch contends that summary judgment is inappropriate because the Defendants failed to properly evaluate evidence that she suffers from disabling arthralgia. She notes that the Defendants never submitted her application to a rheumatologist for review, and claims that Dr. Metcalfe ignored her arthralgia and certain of her job duties, which required the use of both her hands. (Br. Opp. Summ. J. 5-7.) In addition, Dr. Kirsch claims that summary judgment is inappropriate because Dr. Metcalfe "summarily discount[ed] the opinions of her treating physicians . . . because they relied in part on her subjective complaints." (*Id*. at 7.)

Dr. Kirsch notes that she included arthralgia among the reasons she could not work on her initial application for long term disability benefits, and was diagnosed by Dr. Davis with "psoriatic arthritis which has been characterized by . . . asymmetric inflammatory arthritis and arthralgias." (Br. Opp. 6.; KIRSCH00332.) She also recounts that Dr. Hermitanio diagnosed her as having "undifferentiated connective tissue disease . . . [causing] stiffness and joint pain . . . with subjective transient swelling on her hands for which she is not able to function," (Br. Opp. 6; KIRSCH00793),

9

and that Dr. Grossman found that her "[u]se of hands in repetitive actions" was "limited secondary to pain/joint." (Br. Opp. 7; KIRSCH01132.) None of this evidence, she claims, was factored into Dr. Metcalfe's analysis. (Br. Opp. 7.) Furthermore, she argues, Dr. Metcalfe considered only whether she could sit for six out of eight hours per day and occasionally lift ten pounds, without regard to "major tasks" of her job duties that required the use of both her hands, such as reviewing charts, keeping handwritten notes, and typing.[2]

A review of Dr. Metcalfe's report reveals that he did consider the opinions of Dr. Hermitanio and Dr. Davis, but rejected them, because Dr. Hermitanio "did not provide any documentation of objective findings of joint swelling, heat, redness, crepitation, or any significant abnormality," and Dr. Davis did not list what he believed [Dr. Kirsch's] functional disabilities were that [were] keeping her from sitting for six hours out of an eight-hour day and lifting 10 pounds or less on an occasional basis." (KIRSCH00177-001178.) Of course, even if, as Dr. Kirsch alleges, Dr. Metcalfe failed to fully consider her alleged joint pain and swelling of her hands as it related to her job description, this would not automatically undermine Jefferson Pilot's determination that Dr. Kirsch did not qualify for benefits where it relied on many sources of evidence in addition to his report.

Jefferson Pilot explained in its letter denying Dr. Kirsch's final administrative appeal that it had conducted a review of her medical records and found "[t]here is little documentation upon physical examinations noting rashes, weakness, cognitive impairment, or spinal tenderness. [Dr. Kirsch's] strength, when addressed, is rated as 5/5. No swelling or redness of the joints was cited

---

[2] The Defendants dispute that these activities are "major tasks" of Dr. Kirsch's position, claiming they were listed on the Job Analysis form completed by Prevea as the "major tasks requiring use of one or both hands," not the major tasks of her job overall. (Reply 14.) Because the dispute did not form the basis of Jefferson Pilot's decision to deny Dr. Kirsch benefits, however, the dispute is immaterial to the present motion.

10

with mild tenderness of the hands noted once." (KIRSCH00106.) Jefferson Pilot summarized the findings of the treating and reviewing physicians, including findings by Dr. Kirsch's treating physicians that suggested she did not have limitations that would prevent her from completing the duties of her position. For example, Jefferson Pilot noted that upon examination by Dr. Gierl, Dr. Kirsch had a grip strength of 30 kg on the right and 31 kg on the left (KIRSCH00102) and upon physical examination by Dr. Davis there was no objective evidence of swelling, restricted mobility or tenosynovitis of her hands. (KIRSCH00098.) Jefferson Pilot explained that several of Dr. Kirsch's symptoms were of unknown etiology, and some of her "diagnoses" remained unconfirmed. (KIRSCH00106.) But more importantly, Jefferson Pilot concluded that there was no documentation as to why Dr. Kirsch's diagnoses and symptoms rendered her unable to function as a neuropsychologist. (KRISCH00106.)

Jefferson Pilot claims its decision to deny benefits to Dr. Kirsch was not arbitrary or unreasonable because "her doctors failed to provide any objective evidence that [her] medical conditions made her unable to perform her occupation of a neuropsychologist." (Br. Supp. 1.) Citing *Hawkins v. First Union Corporation Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003), Dr. Kirsch argues that it is an abuse of discretion to deny a claimant benefits simply because the claimant's complaints are subjective. In *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317 (7th Cir. 2007), however, the Seventh Circuit Court of Appeals explained its holding in *Hawkins*, in which "the court found a plan had acted arbitrarily and capriciously largely because it based its denial of benefits on its medical consultant's belief that a claimant could never be found to be disabled due to fibromyalgia because the amount of pain an individual experiences is subjective in nature." *Id.* at 322. The Court clarified in *Williams* that, "[a] distinction exists [] between the amount of fatigue

11

or pain an individual experiences, which as *Hawkins* notes is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured." *Id*. at 323. The Court held that because a claimant's functional limitations can be objectively measured, a plan does not act arbitrarily and capriciously in denying benefits "on the basis that the record lacked accurate documentation in this regard," because the subjective nature of a claimant's symptoms "do[] not bar reviewers from requiring accurate documentation from a treating physician that the claimant's subjective symptoms of pain or fatigue limit his functional abilities in the workplace." *Id*.

Here, Jefferson Pilot did just that. It did not refuse Dr. Kirsch benefits solely because her symptoms were subjective, but, as it explained in its letter denying Dr. Kirsch's final appeal, Jefferson Pilot denied her benefits because it concluded that "the medical documentation [did] not support restrictions or limitations." (KIRSCH00106.) Under *Williams*, this was a reasonable basis for denial. Dr. Kirsch has not identified any specific objective data reflecting the extent of her functional impairment, and the Court has found none upon its review of the administrative record.

Although Dr. Kirsch criticizes Jefferson Pilot for having never submitted her application to a rheumatologist for review, ERISA does not require a disability insurer to seek out additional evidence supporting an insured's claim when the claimant's own medical evidence is inadequate. *Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723, 724 (7th Cir. 2003). It is also clear that in contrast to Social Security regulations, ERISA does not confer special weight upon the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

In sum, Jefferson Pilot offered a reasoned explanation for its decision based on the evidence before it and the Plan documents. The Court cannot disturb its determination.

12

## CONCLUSION

For the foregoing reasons, the Court concludes that Jefferson Pilot acted within its discretion in denying Dr. Kirsch's claim for benefits. Accordingly, its motion for summary judgment is hereby **GRANTED**. The clerk is directed to enter final judgment in favor of the Defendant.

**SO ORDERED** this   17th   day of June, 2008.

                                       s/ William C. Griesbach
                                       William C. Griesbach
                                       United States District Judge